IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RONALD HASKINS | * | |
| Plaintiff | * | |
| v | * | Civil Action No. JKB-16-599 |
| CHAPLAIN BIETZEL | * | |
| Defendant | * | |
| | *** | |

## MEMORANDUM

In this civil rights case, plaintiff Ronald Haskins claimed that he was being denied food for 90 days; had gone without food for 14 days; and that he was being denied food in retaliation for his complaints against Chaplain Bietzel and prison dietary staff.  ECF 1.  This court issued an order to show cause why injunctive relief should not be granted to plaintiff given the seriousness of the allegation raised and granting plaintiff an opportunity to file a supplemental complaint. ECF 2.

Counsel for the Division of Correction (DOC) filed a response indicating that plaintiff was not being denied food, nor was he improperly denied placement on a roster for a religious, kosher diet.  ECF 4.  Because the response included evidence in the form of a declaration under oath and verified business records establishing valid non-retaliatory reasons for the actions taken by correctional staff, this court construed the response as a motion for summary judgment and granted plaintiff  21 days to file a reply addressing the allegations raised.  ECF 8.  Plaintiff filed a reply (ECF 9) which he supplemented (ECF 10).  Plaintiff also filed an amended complaint (ECF 6) and a motion to proceed in forma pauperis.[1]  ECF 7.   The court finds a hearing unnecessary for the resolution of the matters pending before it.  *See* Local Rule 105.6 (D. Md.

---

[1]     Plaintiff's motion shall be granted.

2016). For the reasons set forth herein, the complaint shall be dismissed and judgment entered in favor of defendant.

Complaint Allegations

In the supplemental complaint filed by plaintiff pursuant to this court's order, he claims violations of his First and Eighth Amendment rights. He claims that his right to freely practice his religion was violated when he was denied the right to receive a kosher diet; that denying him a kosher diet forced him to go without food; and that he was denied a kosher diet in retaliation for filing complaints against Chaplain Beitzel. ECF 6 at p. 3.

Plaintiff alleged that for three weeks he survived "off a couple boxes of little debbies and some cookies that someone gave me." ECF 6-1 at p. 1. He further states that, "I have a jar of peanut butter but I am afraid to open it at this moment (not knowing how long they would deny me food)." *Id*.

Plaintiff claims Beitzel engaged in retaliation because "somebod[y] or someone . . . filed complaints against Chaplain Beitzel and [the] Dietary Dept." ECF 6-1 at p. 1. He asserts that Beitzel then retaliated for those complaints by "denying food for all the Jews that bought non-kosher items from the commissary." *Id*. He concludes that he was denied food for 90 days. *Id*. As relief he seeks $100 for each meal he missed. ECF 6 at p. 3.

Plaintiff includes with his supplemental complaint an administrative remedy procedure request (ARP) with a response from the Warden of Western Correctional Institution (WCI), where plaintiff is incarcerated, that states in pertinent part as follows:

> [Y]ou have continuously purchased non-kosher items from Keefe Commissary. Only items marked with the letter "K" are considered kosher items. You admitted to this being your second violation to the agreement. Therefore, you have been temporarily removed from your religious diet in accordance with the Religious Diet agreement, which you signed. This agreement states that for your second offense of violation of the agreement you will [be] removed from

      the program for a total of 90 days. After the 90 day time frame has expired you may submit a request to the Chaplain for readmission into the program.

ECF 6-1 at p. 3.

### Response to Show Cause

Chaplain Galen Beitzel provides a declaration under oath in support of the response to show cause. ECF 4-1 at pp. 1-2. He states that on July 30, 2009, plaintiff signed a Maryland Division of Correction Religious Diet Agreement stating that he agreed to abide by all requirements of this program. *Id*. at p. 1. The provisions of that agreement designate the following as violations of the Religious Diet Program that may result in temporary removal from the program (60 or 90 day suspension) or permanent removal with a third offense: the inmate fails to pick up a minimum of 75% of meals served per month; the inmate is seen eating or trading unauthorized food items from the main line; and the inmate purchases or is seen eating food items from the Commissary that are inconsistent with the dietary requirements of the Religious Diet Program. *Id*. at p. 9.

Beitzel states that on January 18 and 25, 2016, and February 8, 2016, plaintiff bought non-kosher items in the prison commissary. ECF 4-1 at p. 1. On February 3, 2016, plaintiff was suspended from receiving the kosher diet for 90 days because he purchased non-kosher food and because this was his second such offense. *Id*., *see also* p. 9 (designating 90-day suspension for second offense) and p. 10 (noting plaintiff bought 19 non-kosher items from commissary). Following his suspension from the religious diet, plaintiff continued to eat regular meals with his housing unit in the inmate dining hall; there is no record of plaintiff engaging in a hunger strike. ECF 4-1 at p. 1.

Plaintiff's ARP, filed February 11, 2016, was investigated by Chaplain Paul Demers and Rabbi Tobesman, who interviewed plaintiff as part of the investigation. ECF 4-1 at pp. 6 – 8.

3

When plaintiff was interviewed, Demers and Tobesman noted that plaintiff could not explain what kosher means; failed to identify the "lacto-ovo diet" as an alternative to the kosher diet despite having a job in the kitchen; and was not aware of the Rabbi's role with regard to kosher food. *Id*. at p. 8. Based on their investigation, Demers and Tobesman recommended that the warden dismiss plaintiff's ARP. *Id*. at pp. 6 – 7. That recommendation was adopted by the Acting Warden and the ARP was dismissed on February 29, 2016. *Id*. at p. 4.

Rabbi Tobesman signed a narrative explaining, with regard to plaintiff's removal from religious diet, that plaintiff relied only on his "interpretation of the Division of Correction directive, civil law, and other sources" but "has not offered any faith based objections to the cause for his removal from the kosher diet." ECF 4-1 at p. 12. Tobesman notes that plaintiff's statement that the commissary vendor Keefe "allowed me to buy non-kosher items" is not credible because "[i]t is the personal responsibility of the kosher adherent to purchase foods that are acceptable as kosher" and the "commissary order form has food designated by a 'k' [to] notify the consumers what is kosher." *Id*. Tobesman adds that, "[k]eeping kosher is a requirement of the Jewish faith, but the adherent must be vigilant and responsible for his kosher needs and requirements." *Id*.

## Standard of Review

Summary judgment is governed by Federal Rule of Civil Procedure 56(a) which provides:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

4

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

Analysis

A.   Retaliation Claim

In order to prevail on a claim of retaliation, plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). It is unclear how much of a showing of adversity must be made in order to survive a motion for summary judgment. *See Burton v. Livingston*, 791 F.2d 97, 100-01 (8th Cir. 1986) ("complaint that a prison guard, without provocation, and for the apparent purpose of retaliating against the prisoner's exercise of his rights in petitioning a federal court for redress, terrorized him with

5

threats of death" sufficient to state claim). "A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone." *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (*judgment vacated on other grounds*, 525 U.S. 802 (1998) (conclusional allegations of retaliation insufficient to state claim).

> Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. *Perry v. Sindermann,* 408 U.S. 593, 597 (1972). Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim.

*ACLU of Md., Inc. v. Wicomico Cty, Md.*, 999 F.2d 780, 785 (4th Cir. 1993).

"In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice*, 40 F.3d 72,74 (4th Cir. 1994)). In his opposition reply, plaintiff states that over the past seven years he "always bought candy from commissary," but the previous commissary vendor contracted to sell goods to the inmates confined in the Maryland Division of Correction provided an entirely separate commissary menu list containing only kosher foods to inmates on a kosher diet. ECF 10 at p. 5. When Keefe took over the contractual position more than three years ago, the commissary menu list was no longer separate and contained both kosher and non-kosher food items on it. *Id*. Plaintiff states that this made things more difficult and asserts that "the burden falls on the contractors." *Id*.

Plaintiff seems to suggest that he has violated the Religious Diet Program diet on past occasions when he posits the question "why now?" regarding his suspension. *Id*. While he

claims that the answer to the question is retaliation, he offers no objective evidence to support that assertion. *Id.* There is, however, objective evidence of a legitimate reason for plaintiff's suspension from the kosher diet: his violation of the Religious Diet Program agreement. Plaintiff does not dispute that he continued to eat in the dining hall following his suspension from the kosher meal plan and that he was not forced to go without any food. There is evidence that there is a viable alternative for the kosher meal plan if plaintiff wanted to remain kosher; thus there is little to no adversity resulting from plaintiff's removal from the kosher diet. *See* ECF 4-1 at p. 8 (Rabbi Tobesman's mention of lacto-ovo diet as alternative to kosher diet). Defendant Beitzel is entitled to summary judgment on the retaliation claim.

    B.    First Amendment Religious Freedom Claim

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). With respect to the free exercise of religion, prison inmates retain a right to reasonable opportunities for free exercise of religious beliefs without concern for the possibility of punishment. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). That retained right is not unfettered. Prison restrictions that impact on the free exercise of religion but are related to legitimate penological objectives do not run afoul of the constitution. *See Turner v. Safley*, 482 U.S. 78, 89-91 (1987). The test to determine if the restrictions are justified requires examination of whether there is a rational relation between the asserted governmental interest and the regulation in question. In addition, this court must examine whether there are alternative means of exercising the right asserted; whether accommodation of the right will impact on the orderly operations of the prison; and whether readily available alternatives to the regulation would be less restrictive.

An additional consideration is the standard provided by the Religious Land Use and Institutionalized Persons Act (RLUIPA). The act provides in part:

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a) (2000).

"[A] prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation." *Holt v. Hobbs*, _ U.S. _, 135 S. Ct. 853, 862 (2015). Prison authorities are permitted to test the sincerity of a religious belief that is being accommodated. *See Cutter v. Wilkinson*, 544 U.S. 709, 725, n.13 (2005) ("prison officials may appropriately question whether a prisoner's religiosity . . . is authentic."); *see also Lovelace v. Lee*, 472 F.3d 174, 188 (4th Cir. 2006). Defendant provides some evidence, which plaintiff fails to dispute, that his adherence to a kosher diet is not based on a sincere religious belief. When interviewed regarding his ARP complaint, plaintiff could not state what "kosher" meant, nor did he offer any faith-based objections to his removal from the kosher meal plan. *See* ECF 4-1 at p. 12. Plaintiff claims that the agreement he was required to sign is invalid because partaking of kosher meals is "not a privilege, it is a requirement pertaining to Judaism." ECF 10 at p. 4. The agreement simply requires participants to adhere to the religious diet of their choice in order to continue receiving it and thus operates as a test of the participants' religious sincerity. Here, plaintiff's religious preference to remain kosher was violated not by correctional staff or Chaplain Beitzel, but by his own purchase and use of non-kosher foods.

Plaintiff's removal from the kosher meal plan also did not place a substantial burden on the exercise of his religious faith, an essential element of a viable claim under RLUIPA. A

substantial burden is one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 718 (1981). Plaintiff had an alternative means available to remain kosher during his suspension from the meal plain, the lacto-ovo diet mentioned by Rabbi Tobesman. *See* ECF 4-1 at p. 8. Plaintiff's attempt to blame his purchase of non-kosher foods on Keefe Commissary rings hollow in light of the fact that kosher items are clearly marked on the menu form provided to inmates when placing an order. Like other religious tenets and faith-based requirements, remaining kosher is the responsibility of the individual choosing to observe that requirement. Summary judgment is appropriate on this claim as the record evidence establishes that plaintiff's First Amendment rights have not been violated by his 90-day suspension from the kosher meal plan.

    A separate order entering judgment in favor of defendant follows.


<u>April 6, 2017</u>                           _____/s/_____
Date                                  James K. Bredar
                                        United States District Judge